MELVILLE E. MEAD *et al.*

*v.*

THE TRUSTEES OF THE PRESBYTERIAN CHURCH *et al.*

*Opinion filed October 23, 1907.*

1. WILLS—*rule of evidence in matter of probate.* Upon application to probate a will in the county court the proponents are limited to the testimony of the subscribing witnesses, and the rule is the same in the circuit court upon appeal, if the will was admitted to probate in the county court; but if the will was refused probate in the county court, the proponents, upon appeal to the circuit court, may resort to any legitimate evidence which may be resorted to to establish a will in chancery.

2. SAME—*a formal attestation clause is not essential.* It is not essential to the validity of a will that a formal attestation clause reciting all the facts necessary to a correct execution of the will be added to the instrument.

3. SAME—*when will may be probated though there is no attestation clause and the witnesses do not remember the facts.* A will in the handwriting of the testator and found among his papers, duly signed by him and attested by witnesses who wrote the word "witness" after their names, is entitled to probate on appeal from an order of the county court refusing probate, even though there is no formal attestation clause, and the witnesses, although they remember signing the will, do not recollect whether they signed the will at the testator's request and in his presence and the presence of each other or what was said at the time of the transaction, where other evidence clearly establishes the genuineness of the will and signatures and that the testator was of sound mind and memory.

APPEAL from the Circuit Court of Winnebago county; the Hon. A. H. FROST, Judge, presiding.

FRED E. CARPENTER, and E. D. REYNOLDS, for appellants.

ROBERT REW, E. P. LATHROP, and ROBERT LATHROP, for appellees.

Mr. CHIEF JUSTICE HAND delivered the opinion of the court:

Mead Holmes, a retired minister of the gospel, died at Rockford, Winnebago county, on June 16, 1906, seized and possessed of an estate valued at from $40,000 to $50,000, consisting of real and personal property. After the death of said Mead Holmes there was found among his private papers an instrument in his own handwriting, which was signed by him and witnessed by two witnesses, purporting to be the will of said Mead Holmes, by the terms of which he gave absolutely to Mary Emilie Holmes, his daughter, certain personal and real property. He also gave $300 to the Young Men's Christian Association of Rockford, Illinois; $1000 to the Presbyterian Theological Seminary of the Northwest, in connection with the General Assembly of the Presbyterian Church of the United States of America, and the balance of his estate he provided should be held by his daughter for certain charitable purposes specified in said instrument, and in case of her death the portion of his estate devoted to charity was to be adminstered by the Presbyterian Church of the United States of America, of which he was a member. The wife of Mead Holmes died prior to the date of the execution of said instrument and Mary Emilie Holmes died about one year prior to the death of Mead Holmes, and at the time of the death of Mead Holmes he was unmarried and childless, and his surviving heirs consisted of distant relatives residing in States other than Illinois. The instrument was presented for probate to the county court of Winnebago county and probate thereof was refused, whereupon the Young Men's Christian Association of Rockford, Illinois, and the trustees of the Presbyterian Church of the United States of America, prosecuted an appeal to the circuit court of said county, where the instru-

ment was by that court admitted to probate as the last will of Mead Holmes, and the heirs of Mead Holmes have prosecuted a further appeal to this court.

On the trial in the circuit court it' was established, beyond question, by witnesses other than the attesting witnesses, that Mead Holmes was of sound mind and memory at the date of the execution of said instrument and at the date of his death and that said instrument was in his own handwriting; that his genuine signature was attached thereto, and that the instrument was signed by C. T. Boswell and C. E. Paul, as witnesses to its execution. The date of the instrument and the signatures of Holmes, Boswell and Paul to said instrument appear in the following form:

MEAD HOLMES (L. S.)

ROCKFORD, ILLINOIS,  
*June 24th, 1897.*

C. T. Boswell (*witness*)  
C. E. Paul      "

*Witnesses.*

It also appeared that the word "witnesses," preceding the names of C. T. Boswell and C. E. Paul, was in the handwriting of Mead Holmes, and that the word "witness," after the name of C. T. Boswell, was in the handwriting of C. T. Boswell.

The witness Boswell was called and examined in open court and testified that he was a druggist; that he had resided in Rockford for twenty-three years, where he was in business; that he knew Mead Holmes for many years prior to his death; that Mead Holmes lived a short distance from his drug store; that C. E. Paul, at the date of the instrument sought to be probated, was in his employ in his drug store; that his signature was attached to the instrument; that he had no doubt but that he signed said instrument as an attesting witness at the request of Mead Holmes and in the presence of Mead Holmes and C. E. Paul, but that he had no recollection of the transaction. The evidence of C. E. Paul was taken by deposition at Atlanta, Nebraska,

where Paul then resided, and was read upon the hearing in the county court and, by stipulation, upon the hearing in the circuit court. He testified his genuine signature was attached to the instrument shown him, which purported to be the will of Mead Holmes, and that he signed said instrument at the request of Mead Holmes, in the store of C. T. Boswell, but that he had no recollection of anything that was said at the time he signed the instrument, or whether Boswell was present at the time he signed the same or not.

It is the rule in this State that upon a hearing in the county court upon the application for the probate of a will the evidence in support of the will is confined to the testimony of the attesting witnesses; and such is the rule, upon appeal, in the circuit court where the will was admitted to probate in the county court. Where, however, the probate of the will was rejected in the county court and an appeal has been prosecuted to the circuit court, on the trial in the circuit court on such appeal resort may be had to any legitimate evidence which may be resorted to to establish a will in chancery. (*Crowley* v. *Crowley*, 80 Ill. 469; *Thompson* v. *Owen*, 174 id. 229; *Gould* v. *Chicago Theological Seminary*, 189 id. 282.) And it has also been held that where the instrument offered for probate bears the genuine signature of the testator and is properly witnessed, it is entitled to be admitted to probate if the attestation clause recites all the facts necessary to a legal execution of the will, although the subscribing witnesses are unable to recollect that all the formalities prescribed by the statute and recited in the attestation clause were actually complied with. *Thompson* v. *Owen, supra; Gould* v. *Chicago Theological Seminary, supra; Hobart* v. *Hobart*, 154 Ill. 610.

In *Abbott* v. *Abbott*, 41 Mich. 540, which was approved in the *Thompson* and *Gould cases, supra,* and where one of the attesting witnesses failed to remember and could not testify that all the formal requisites required by the statute to be observed had been complied with, the court said

229 — 34

(p. 542) : "But we know of no rule of law which makes the probate of a will depend upon the recollection or even the veracity of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud; but if the forgetfulness or falsehood of a subscribing witness can invalidate a will, it would be easy, in many cases, to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others."

In the *Thompson case, supra,* neither of the attesting witnesses could remember that he had witnessed the will or that the testator had signed the will or acknowledged its execution in his presence. It was, however, held the will was entitled to be admitted to probate. The only substantial difference between this case and the *Thompson case* is, that in that case there was an attestation clause attached to the will which recited all the facts necessary to show a legal execution of the will, which is not the case here. In this case, however, the witness Boswell wrote immediately after his name the word "witness," which shows clearly he understood that he was witnessing the execution of the instrument which he had signed as a witness, and the marks " following the name of Paul and appearing immediately underneath the word "witness," show that witness also understood he was signing as a witness to the execution of the instrument. It was not necessary that a formal attestation clause reciting all the facts necessary to a correct execution of the will be added to the instrument to make it a valid will. *More* v. *More,* 211 Ill. 268; *Calkins* v. *Calkins,* 216 id. 458.

In *Orser* v. *Orser,* 24 N. Y. 51, the court said: "A will, duly attested upon its face, the signatures to which are all genuine, may be admitted to probate although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied

with, and even although some of them swear positively that they were not, if the other evidence warrants the inference that they were."

In the case of *In re Estate of Kohley,* 200 Ill. 189, a will was held by this court to be entitled to be admitted to probate although the testimony of the attesting witnesses tended to show that the will had not been signed by the testatrix in the presence of the witnesses or that she ever acknowledged the same to them to be her will.

And in *Jauncey* v. *Thorne,* 2 Barb. Ch. 40, Chancellor Walworth said: "It is a very different question, however, whether, to sustain and establish the validity of a will, the courts should hold it to be necessary for the subscribing witnesses to recollect and testify to the fact that all the formalities prescribed in the statute were actually complied with, for if this were required, very few devises of property would be supported unless the testimony of the witnesses was taken and perpetuated soon after wills attested by them were made. This, in many cases, would be wholly impracticable, as the testator frequently lives many years after he has executed his will. And where there is good reason to suppose the will has been duly executed and that no fraud or want of testamentary capacity existed at the time it was made, justice to the dead as well as to the living requires that the declared wishes of the testator should not be defeated by the imperfect recollections of the attesting witnesses or by reason of their deaths or removal beyond the jurisdiction of the State. It is for this reason that the most liberal presumptions in favor of the due execution of wills are sanctioned by courts of justice, where, from lapse of time or otherwise, it may be impossible to give positive evidence on the subject."

In this case, while there was no attestation clause attached to the instrument reciting all the acts necessary to be done that the will might be legally executed, we think the evidence found in this record clearly supplies the presump-

tion arising from the presence of an attestation clause, and that there can be no question in the unbiased mind but that the instrument admitted to probate was duly executed by Mead Holmes as and for his last will, in the presence of Boswell and Paul, who signed the same as attesting witnesses. The instrument was in the handwriting of Mead Holmes. It was therefore impossible that a spurious will was foisted upon him. It was found among his private papers after his death, duly signed and witnessed, which showed he considered it a valid will. The objects of his bounty designated in the instrument were persons and objects which had received his most tender consideration and thoughtful care in life, and there is nothing lacking in the evidence to show a legal execution of the will, save that the attesting witnesses, by lapse of time, could not recollect the facts surrounding the execution of the instrument by Mead Holmes as his last will and testament. To lay down as a rule of law that the failure of the attesting witnesses to recollect all the facts surrounding the execution of a will would defeat its probate, would be, in many instances, to defeat the probate of wills where there is no reasonable question but that they were executed by the testator or testatrix with all the formalities required by law, which is in conflict with the decisions of this and many other courts of last resort. *Hobart* v. *Hobart, supra; Thompson* v. *Owen, supra; Gould* v. *Chicago Theological Seminary, supra; Abbott* v. *Abbott, supra; Orser* v. *Orser, supra; Jauncey* v. *Thorne, supra.*

Finding no reversible error in this record the judgment of the circuit court will be affirmed.

*Judgment affirmed.*