[No. 7162]

IN RE ESTATE OF CAREY.

1. WILL—*Contest—Court May Direct Verdict,* when the facts require it.

2. ——*Signature—Acknowledgment*—Under Mills Stat. sec. 4670 the will, and not the signature, is the subject of the testator's acknowledgment.

3. ——*Evidence*—To establish a will the evidence may be direct and positive, or it may be circumstantial and presumptive. As in the proof of deeds and other documents, reference must be had to the casualties of life, and the infirmities of memory.

Where owing to the failure of the memory of the subscribing witnesses it is impossible to obtain direct testimony that the testator's signature was upon the paper when the witnesses subscribed it, circumstances may be resorted to.

The testator came into the room where the witnesses were, with pen, ink, and the paper in his hand, sat down for a moment at the table, and then arose, and handing the pen to the first witness, declared that the paper was his will, requesting him to sign it. The testator's declaration, considering the circumstances under which it was made was held to indicate that the paper was complete, and that he desired the witnesses to attest it as such.

4. ——*Undue Influence*—The acts of friendship and kindness performed by one neighbor to another are not to be stigmatized as undue influence.

5. ——*Duty of Testator to Family—Unnatural Disposition*—The testator may, if it is his pleasure, leave his whole estate to strangers. Neither

courts nor juries should reject a will merely because not in accordance with their ideas of justice or propriety.

*Appeal from Adams District Court.*—Hon. Charles McCall, Judge.

Mr. Frank Prestidge, Mr. George L. Hodges, Mr. George A. Garard, for appellant.

Mr. Edward Ring, Mr. Harrie M. Humphreys, for appellees.

Chief Justice Musser delivered the opinion of the court:

By this appeal it is sought to reverse a judgment of the district court admitting to probate a paper writing purporting to be the last will of George Strachan Carey. The judgment of the district court was a result of an appeal from the county court where the writing had been admitted to probate as a will. The date of the purported will was February 26, 1900, and the subscribing witnesses fixed the time that they signed the paper at about that date. The appellant calls attention to sections 4653 and 4670 Mills' Ann. Stats. (1st Ed.). The first section is as follows:

"All wills, by which any lands, tenements, hereditaments, annuities (or) rents are devised, shall be reduced to writing, and signed by the testator or testatrix, or by some one in his or her presence, and by his and (or) her direction, and attested in the presence of the testator or testatrix, by two or more credible witnesses."

This section appears as section 2 of chapter XC Rev. Stat. '68, section 2789 Gen. Laws '77, section 3482 Gen. Stat. '83. In 1903, the law with reference to wills was revised and the substance of that section now appears in Rev. Stat. '08, sec. 7071, as follows:

"All wills by which any property, real or personal, is devised or bequeathed, shall be reduced to writing and signed by the testator, or by some one in his presence and by his direction, and attested in the presence of the testator, by two or more credible witnesses."

Section 4670 Mills' Ann. Stat. (1st Ed.), is as follows:

"If, upon the hearing of such proof, it shall satisfactorily appear by the testimony of two or more of the subscribing witnesses to such will, that they were present and saw the testator sign such will, and attested the same at his request, or that he acknowledged the same to be his last will, and that they believe the testator to be of sound mind and memory at the time of signing and acknowledging the same, the court shall admit the same to probate and record; *Provided,* That no proof of fraud, compulsion or other improper conduct be exhibited, which, in the opinion of the court, shall be deemed sufficient to invalidate or destroy the same; and every will, testament or codicil, when thus proven, shall be recorded by the clerk of the county court, in a book to be provided by him for that purpose, and shall be good and available in law, for the granting, conveying and assuring the lands, tenements and hereditaments, annuities, rents, goods and chattels therein and thereby given, granted and bequeathed."

That section appeared in chapter XC, Rev. Stat. '68 as section 19, section 2806 Gen. Laws '77, section 3499 Gen. Stat. '83, and with some verbal modifications, not important in this case, it now appears as section 7088, Rev. Stat. '08.

The appellant first contends that the paper writing in question was not executed or proven as provided by these statutes. He intimates that the evidence of one of

the subscribing witnesses shows affirmatively that the signature of the testator was not on the paper writing at the time they signed it as witnesses. This cannot be said to be a correct statement of the result of the testimony. The only inference that can be drawn from the testimony of each of the subscribing witnesses is that at the time they testified they did not remember whether the signature of the testator was there or not when they affixed their signatures. They did not testify that it was there, neither did they testify that it was not there. Accepting this as the effect of their testimony, we understand the position of the appellant to be that such testimony was not sufficient to admit the will to probate. His position, as stated in the language of the brief, is as follows:

"The primary contention upon which our arguments will rest as to this branch of the case is *that, in order that the paper writing here under consideration may be held to constitute a legal will, it must be established by legal proofs that the signature of George Strachan Carey was affixed thereto at the time the attesting witnesses affixed their signatures thereto or before the attesting witnesses separated on the occasion of the alleged execution of the paper as a will.*"

The deceased was a bachelor and lived alone on and operated a large ranch in Adams County. Each of the subscribing witnesses testified that about the date of the paper writing, to-wit, February 26, 1900, they were present with Mr. Carey in the kitchen of his ranch house. Mr. Carey went into another room and returned with pen and ink and the paper in question in his hand and told them that it was his last will and requested them to sign it as witnesses, which they did in the presence of Mr. Carey and each other. They both testified that they believed Mr. Carey was of sound mind and memory at that time.

One of the witnesses, Mr. Patterson, testified that Mr. Carey sat down at the table and got up and requested them to sign it. As said before, each of the witnesses testified that he did not remember whether the signature of Mr. Carey was there or not at the time they signed it. The signature could have been seen by them at the time, if it was there. The testimony showed that the body of the writing, as well as Mr. Carey's signature thereto, was in the handwriting of Mr. Carey. Mr. Carey died in November, 1908. · After his death, the writing was found in his ranch house, among his personal effects, enclosed in a sealed envelope, on which was written, in the handwriting of Mr. Carey, a direction that it was to be sent to a named attorney in Denver. The trial, at which the subscribing witnesses testified, occurred in the district court in September, 1909, nearly ten years after they had written their names on the paper. The testimony, as stated above, was not contradicted in any way.

The witnesses did not see Mr. Carey sign the paper. The evidence shows a sufficient acknowledgment of it as the last will of the testator, if it was a will at the time the witnesses subscribed their names thereto. The question is, was the evidence, in the absence of anything to the contrary, sufficient to establish that the signature of the testator was on the paper at that time, for there is no evidence that it was placed thereon by the testator after the witnesses had signed it and before they separated? This question has not been heretofore determined by this court.

In *Hobart v. Hobart*, 154 Ill. 610, 39 N. E. 581, 45 Am. St. 151, it is pointed out that some local statutes, particularly in New York, require that there must be an acknowledgment of his signature by the testator; while, in Illinois, it was sufficient when the witnesses did not see him sign the paper that the testator acknowledged the

will to be his act and deed, and the court was inclined to think that decisions from those states that require an acknowledgment of the signature were not applicable in Illinois. This difference in statutes is pointed out in Schouler on Wills, Sec. 321, where the author states that one line of statute expression follows the old English statute of frauds, which made the will the subject of acknowledgment, while the other follows the statute of Victoria, which made the signature the subject of acknowledgment, and it is said that when the statute makes the signature and not the will the subject of acknowledgment, a stricter rule of construction has been adopted.

The appellant, in his brief, admits that under the old statute of frauds a more liberal construction was adopted than under the Victorian statute. It must be borne in mind that our statute requires the will and not the signature to be the subject of acknowledgment. Our statute does not say that the will shall be acknowledged to be the act and deed of the testator, as in Illinois, but simply that he shall acknowledge it to be his last will. In the face of these differences as to construction in the two lines of statutes, our legislature adopted a statute expression more in conformity with the old statute of frauds than with the Victorian statute. Our statute is the guide that our courts have as to the legislative intent in this state. It must have been intended thereby that the courts of this state should adopt a construction in harmony with that adopted under similar statute expressions by other courts, rather than a construction adopted under essentially different statutes.

It appears to us that the authorities upon which the appellant relies have reference to statutes wherein the signature and not the will is the subject of attestation and acknowledgment. Such cases can be authority here only by way of analogy, and when the facts are analogous

also. His principal cases are from New York, where it seems the statute has particular reference to the signature of a testator.

In the matter of *Mackay*, 110 N. Y. 611, 18 N. E. 433, 1 L. R. A. 491, 6 Am. St. 409, the testator told the subscribing witnesses that the paper was his will. He handed it to them so folded that they could see no part of the writing except the attestation clause. They did not see either his signature or his seal. The direct evidence was that the witnesses did not see the signature and could not see it. At the close of the opinion it is said:

"The formalities prescribed by the statute are safeguards thrown around the testator to prevent fraud and imposition. To this end the witnesses should either see the testator subscribe his name, or he should, the signature being visible to him and to them, acknowledge it to be his signature."

If the paper had been so placed that the witnesses could have seen the signature, and ten years thereafter they testified that they could not remember whether the testator's name was there or not, but that they could remember that he told them that it was his will, and wanted them to witness his signature, the facts would be analogous to the facts here, but the case does not inform us what the court would have done under the changed circumstances.

In *Lewis v. Lewis,* 13 Barb. 17, the paper was so folded that the witnesses could not see the signature if it was there. The court bore down on the fact that the attestation and acknowledgment of the signature were required by the statute. If the facts had been that the paper was so placed that the signature could have been seen, but the witnesses did not remember whether it was

there or not, the opinion does not disclose what the result would have been. The court, however, says on page 25:

"The law of evidence, in its application to the proof of the several facts which, united, constitute a valid will, is the same as it is in its application to the proof of any other fact. The evidence may be direct and positive, or it may be circumstantial and presumptive; for the law of evidence in regard to wills, as well as in regard to deeds and documentary proof generally, must have reference to the casualties of human life and the infirmities of human memory."

This is a general declaration of law that is applicable here, in view of the fact that the subscribing witnesses could not remember, after ten years, whether Mr. Carey's signature was on the will when they signed it. In the case of *Sears v. Sears,* 77 O. St. 104, 82 N. E. 1067, 17 L. R. A. (N. S.) 353, 11 Ann. Cas. 1008, it appears that the statute required that the will should be signed by the testator at the end thereof. At the end of the will, before the attestation clause, appeared a blank space where the name should have been written. It was not there. The only place where the name did appear was in the attestation clause. Under such a statute and such a state of facts, the court held that the will was not properly executed. Other cases cited could be analyzed to show such a difference in statutes or in facts as to render them inapplicable to the case at bar. On the other hand, in *Orser v. Orser,* 24 N. Y. 51, in a case where one of the subscribing witnesses was dead and the other could not remember that the decedent declared the instrument to be his will or acknowledged his signature, the court said:

"The result of the authorities upon the probate of wills is, that the question of the due execution of a will is to be determined, like any other fact, in view of all the legitimate evidence in the case; and that no con-

trolling effect is to be given to the testimony of the sub-
scribing witnesses. Their direct participation in the
transaction must, of course, give great weight to their
testimony; but it is liable to be rebutted by other evi-
dence, either direct or circumstantial. A will, duly at-
tested upon its face, the signatures to which are all gen-
uine, may be admitted to probate, although none of the
subscribing witnesses are able to swear, from recollec-
tion, that the formalities required by the statute were
complied with; and even although some of them should
swear positively that they were not, if the other evidence
warrants the inference that they were.''

In Schouler on Wills, Sec. 322, it is said that the re-
sult of the cases under the statute of Victoria, as to
whether the testator's signature was on the will when it
was produced to the witnesses for their attestation, ap-
pears to be:

''That in the absence of direct evidence on the point
one way or the other, the court may, independently of any
positive evidence, investigate the circumstances of the
case, and may form its own opinion from these circum-
stances, and from the appearance of the document itself,
whether the name of the testator was or was not upon it
(or rather might not have been seen), at the time of the
attestation. But the court should mainly consider
whether the witnesses did not see, or at least have an op-
portunity of seeing, the testator's signature when they
attested; for if they did not, it is immaterial that the
signature was actually there, but hidden from them.''

It would appear from this that in the circumstances
of this case the will would be sufficiently proven under the
Victorian statute, or a statute essentially like it.

The opinion in *Re Shapter's Estate,* 35 Colo. 578, 85
Pac. 688, 6 L. R. A. (N. S.) 575, 11 Am. St. 216, shows

that circumstances surrounding the execution of a will may be appealed to. In the face of that decision, we do not go astray in saying that in a case like the present where, owing to the failure of the memory of the subscribing witnesses, after the lapse of a long time, it was impossible to obtain direct testimony that Mr. Carey's signature was on the paper when the witnesses signed it, circumstances may be resorted to to supply whatever deficiency there was in that particular. Mr. Carey came into the room where the witnesses were with pen, ink and the paper in his hand, sat down for a moment at the table, arose and handing the pen to the first witness said it was his will and asked them to sign it. What did he sit at the table for with a pen in his hand but to sign the paper? If it was his will it was not his completed will until he had signed it, and his declaration that it was his will, at that time, and under such circumstances, indicated that he had completed his part, and that he wanted the witnesses to attest it as completed. The usual order of signatures in such cases is for the testator to sign first and then the witnesses. It is said in *Allen v. Griffin*, 69 Wis. 529, 533, 35 N. W. 21:

"We think, in the absence of clear proof that the witness or witnesses signed before the signing of the testator, it should be presumed that the testator signed first. This would be the usual order of signature."

While it is not necessary that the testator sign before the witnesses, yet the usual order is that he do so. So that in the absence of anything to the contrary it appears from the testimony that when Mr. Carey sat down at the table with a pen in his hand he signed the will and after him the witnesses. In *Hobart v. Hobart, supra,* it appeared that the statute made the will the subject of attestation and acknowledgment. One of the subscribing witnesses was dead. The other testified that the deceased

witness was her husband; that the testator and his wife brought the will to her house. It was not stated that the testator had signed it, and she could not remember whether his signature was there or not. He declared it was his will and asked the witness to sign it. The court said:

"While it is true that the witness cannot remember seeing the signature, yet she cannot say positively that she did not see it. It is clear, however, that the testator produced before the subscribing witnesses an instrument in writing which he stated to be his will, and asked them to sign it as witnesses. A will must be reduced to writing, and signed by the testator, or by some one in his presence and under his direction. The words, 'said will,' in section 2 refer back to a will reduced to writing and signed. An instrument not in writing and not signed is not a will. When the testator called the paper his will, it will be presumed, in the absence of any evidence to the contrary, that he had signed it, inasmuch as a signature was necessary to justify him in calling it a will. Included in the declaration of the testator to the witnesses that the paper was his will, was the further declaration that he had signed it. Where the testator declares to the witnesses that the instrument is his will, or requests them to attest his will, such declaration or request implies that the same has been signed by him. (*Nickerson v. Buck,* 12 Cush. 332.) In the latter case it was said: 'The request to these witnesses to attest his will was quite enough to authorize the inference that he had executed a paper as a will, and was equivalent to his acknowledgment that he had signed some paper as a will.' The fact, that a testator seeks the attestation of witnesses and gives directions to them as to signing their names, furnishes strong presumptive proof that he had signed the will. (*Dewey v. Dewey,* 1 Metc. 349.) Where a testator took a paper from his desk, and asked a witness to sign it, and pointed

out the place where he wished him to put his name, and the witness did so, not knowing what the paper was, and not noticing the signature on the paper, it was held that there was a good attestation of the will. (*Ela et al. Exrs. v. Edwards,* 16 Gray 91.)"

In *Mead v. Presbyterian Church,* 229 Ill. 526, 82 N. E. 371, 14 L. R. A. (N. S.) 255, 11 Ann. Cas. 426, there was no attestation clause to the will, but the name of the testator and of the two witnesses appeared at the end as is precisely the case here. Boswell, one of the subscribing witnesses, identified his signature as such witness and said that he had no recollection of the transaction. The other witness, Paul, identified his signature and testified that he signed the instrument at the request of the testator, but had no recollection of anything that was said at the time he signed the instrument, or whether the other witness was present or not. The court held that the evidence was sufficient to admit the will to probate. The instrument was in the handwriting of the testator. It was found among his private papers after his death, duly signed and witnessed. And the court said there was "nothing lacking in the evidence to show a legal execution of the will, save that the witnesses, by lapse of time, could not recollect the facts surrounding the execution of the instrument by Mead Holmes as his last will and testament. To lay down as a rule of law that the failure of the attesting witnesses to recollect all the facts surrounding the execution of a will would defeat its probate, would be, in many instances, to defeat the probate of wills where there is no reasonable question but that they were executed by the testator or testatrix with all the formalities required by law, which is in conflict with the decisions of this and many other courts of last resort."

What the appellant desires this court to say is that, although the subscribing witnesses testified directly to all the requirements of the statute for the attestation and

acknowledgment of the will, except as to the presence of Mr. Carey's signature thereon at the time they signed it, the will was not proven to have been duly executed. Such an announcement as that would result in the overthrow of most of the wills that are made and would be almost a deprivation of the statutory right to make a will.

It is plain, therefore, that the proponents, by evidence direct and circumstantial, made *prima facie* proof of the due attestation and acknowledgment of the will in question, and as there was no evidence in the case to in any manner overcome the *prima facie* proof the evidence was conclusive.

This conclusion also disposes of objections made to instructions given and refused and relating to this branch of the case, for under the evidence the jury could not have found otherwise than that the will was executed and proven as the statute requires.

In the will, the testator, Mr. Carey, gave $500 to a friend, and the remainder of his property to Richard Price, the proponent and appellee, and it was expressly stated in the will that it was made to prevent any property from going to the testator's brother, the contestant and appellant.

The issue of want of mental capacity of the testator was raised. This issue was submitted to the jury and found against the contestant. The issue of undue influence was also raised and on this issue the court instructed the jury to find for the proponent, and against the contestant. Error is assigned on this direction of the court. In a will contest, as in ordinary civil actions, the court may direct a verdict when the facts require it. *In re Shell's Estate,* 28 Colo. 167, 63 Pac. 413, 53 L. R. A. 387, 89 Am. St. 181. All that the evidence discloses as to influence exerted by Price is that Price transacted con-

siderable business for the testator during many years of their acquaintance, especially in selling cattle. They lived some distance apart. Price and the testator visited each other's home frequently, and were warm personal friends. Aside from this, there is utter want of testimony that Price influenced the making of the will. It is claimed that this established a fiduciary relation between them. This claim cannot be sustained. The direct opposite was held in *Snodgrass v. Smith*, 42 Colo. 60, 94 Pac. 312, 15 Ann. Cas. 548, where it was said:

"It is not true, as contestant says, that the fact that proponent was the cousin and friend, the nurse and business partner, of testatrix, gave rise to a fiduciary relation between them. The contrary has been expressly ruled."

There is no evidence whatever, circumstantial or otherwise, that Price unduly influenced the making of the will. The fact that he and the testator were friends, and that he showed some acts of neighborly kindness towards, and transacted business for, the testator, no doubt influenced the latter to make Price his legatee. It cannot be expected that a man will leave his property to another not related to him by ties of blood and family, unless that other has shown friendliness toward him and a disposition to help him when in need. Such kindness, friendliness and disposition cannot be said to be undue influence. It is said in the brief that the disposition of the testator's property was unnatural and capricious, and that this was a fact to be considered on the question of undue influence. The testator had left his home in England about forty years before his death, and during all that time had been separated from his brother, and had no communication with him. During the nine or ten years that intervened between the making of the will and his death, the testator told several people that he had made

a will, leaving his property to Price. He told some of them that he did not want his brother to have any of his property because, as he said, his brother had done him a great wrong. He also stated that he knew the Prices would take care of him in his old age when he needed care.

Under such circumstances, it was certainly not capricious or unnatural for him to make the will as he did. There is in this state a statute giving the right to make wills, as well as a statute of descent and distribution. People are given their choice of these statutes. The testator, in this case, chose to avail himself of his right to make a will. Neither courts nor juries ought to deprive a man of that right simply because he may dispose of his property in a manner not satisfactory to them.

On the whole record, it appears plainly that this will was the free and voluntary act of George Strachan Carey, and that he did precisely what he wanted to do without any undue influence whatever and no other conclusion can be drawn from the testimony. Under such circumstances, the court was right in directing the jury as it did on the question of undue influence. Perceiving no prejudicial error in the record, the judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE GABBERT and Mr. JUSTICE HILL concur.