73 A.3d 374

Irving **GROAT**

v.

**Kristin E. SUNDBERG, et al.**

No. 1907, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Aug. 29, 2013.

**146**

P. Tyson Bennett (Renee I. Madden, Carney, Kelehan, Bresler, Bennett & Scherr, LLP, on the brief) Columbia, MD, for appellant.

Mark A. Binstock (Kevin K. D'Anna, Paley, Rothman, Goldsten, Rosenberg, Eig & Cooper, Chartered, on brief) Bethesda, MD, for appellee.

Panel: WOODWARD, MATRICCIANI, and JAMES P. SALMON (Retired, Specially Assigned), JJ.

WOODWARD, J.

On June 18, 2010, Irv Groat, appellant,[1] filed a request with the Register of Wills of Anne Arundel County that a one-page document dated January 21, 2010 (the "Document") be admitted to probate as a codicil to the will of Frank Halgas ("Mr. Halgas"),[2] who had died on March 21, 2010 or, in the alternative, that a hearing be held to determine the Document's validity. Appellees, Kristin E. Sundberg and Michael Pren-

---

1. Although appellant's legal name is Irving Groat, we refer to him by the name that appears in the document he sought to admit to probate as a codicil, for the sake of clarity.

2. The decedent's name appears at various places in the record as either "Frank A. Halgas" or "Frank P. Halgas."

dergast, challenged the admission of the Document to probate. On August 26, 2010, a hearing was held before the Orphans' Court for Anne Arundel County to determine the validity of the Document as a codicil. On September 14, 2010, the orphans' court determined that the Document did not satisfy the witnessing requirements for a testamentary document under Maryland Code (1974, 2011 Repl.Vol.), § 4–102 of the Estates and Trusts Article ("E.T.") and refused to admit the Document to probate as a codicil to the will of Mr. Halgas.

Appellant presents three questions for our review, which we have slightly rephrased:

1. Did the orphans' court err when it placed the burden of proving due execution on appellant?

2. Did the orphans' court err when it implicitly considered that an interested witness's failure to recall whether she was in the same room as the testator at the time she signed the codicil was evidence against due execution?

3. Is the requirement of E.T. § 4–102 that a witness sign "in the presence of the testator" satisfied when a witness signs a codicil at the direction of the testator and while in the same house as the testator?

For the reasons set forth herein, we shall answer each question in the negative and accordingly affirm the judgment of the orphans' court.

## BACKGROUND

On August 12, 2006, Mr. Halgas executed a Last Will and Testament (the "Will"). He appointed his niece, Melissa Halgas ("Ms. Halgas"), "Executrix" of the Will. Article IV of the Will stated:

I have provided, through MicroLamda, LLC, for the payment to my estate of $500,000 in life insurance benefits upon my death for my interest in MicroLamda, LLC. Upon receipt of such insurance proceeds by my Executor I direct that my Executor convey all of my right, title, and interest in the ownership of MicroLamda, LLC as follows:

a. One half of my interest to Kristin E. Sundberg, and

b. One half of my interest to Michael Prendergast.

In the event that either predeceases me then I give, devise and bequeath their one half interest to the survivor.

In Article V of the Will, Ms. Halgas was to receive "all of [Mr. Halgas's] estate and all the rest, residue and remainder of [his] estate, both real and personal property of every description whatsoever, including any property over which [he has] a power of appointment. . . ."

On March 21, 2010, Mr. Halgas died. Appellant thereafter asked the attorney for the Estate of Frank Halgas (the "Estate") to present the Document to the Register of Wills for probate as a codicil to the Will. The Document is reproduced, in its entirety, as follows:

January 21, 2010

Upon my death I will transfer all of my stock to Irv Groat for the sum of $10,000.00.

A copy of the check should be furnished to Micro Lambda to initiate transfer.

Frank Halgas

Irv Groat

The attorney for the Estate refused to present the Document to the Register of Wills, because he believed that it failed to satisfy the statutory requirements of a testamentary document.

On June 18, 2010, appellant filed a request with the Register of Wills for Anne Arundel County that the Document be admitted to probate as a codicil to the will of Mr. Halgas or, in the alternative, that a hearing be held to determine the Document's validity. On June 22, 2010, the Will was admitted to probate, and Ms. Halgas was appointed personal representative of the Estate.

On August 26, 2010, a hearing was held before the orphans' court to determine the validity of the Document as a codicil to the Will. At the hearing, appellant testified that, between January 7 and 14, 2010, Mr. Halgas contacted him about executing a codicil:

Mr. Halgas told me that it was a Codicil and he emailed me a soft copy of [the Document] and directed me over the phone to print out three copies of it and bring it with me to have lunch with him at his home, bring the three copies. I did so. In his presence he asked me to sign it, sign all three copies, and I did, and he signed all three copies in front of me and he asked me to leave them on the desk in his den where he was spending most of his time.

We ate in the den. He had an easy chair where he spent most of his time because that was the most comfortable place for him at the time. So all three copies were signed by him, by me that day and left on his desk and he told me he would have [Ms. Halgas] sign them and call me up when that was accomplished.

Ms. Halgas testified that on January 15, 2010, she had a conversation with Mr. Halgas about "his intention to have—to transfer the stock to [appellant], instead of following the Will as it was written." Ms. Halgas continued:

And so [Mr. Halgas] said that the next time I came, which would be two weeks later, he would have a document ready for me to sign. And so when I came back two weeks later,

it was around February 6th, 5th [or] 6th. [The Document] was there, and it was signed by Uncle and [appellant], and I signed it.

Ms. Halgas clarified that she did not see anyone sign the Document; it had already been signed by Mr. Halgas and appellant. She specifically recalled seeing Mr. Halgas's signature on the Document.

On direct examination, appellant's counsel asked Ms. Halgas whether she signed the Document in Mr. Halgas's presence:

> [COUNSEL FOR APPELLANT]: And was [Mr. Halgas] in the room at the time you signed the document?

> [MS. HALGAS]: Yeah. As [appellant] mentioned, he was in the chair that he was always sitting in. And to be honest with you, I don't remember where the documents were sitting. They may have been on his desk. They may have been in the kitchen. I can't recall.

> [COUNSEL FOR APPELLANT]: **Just to be clear, [Mr. Halgas] gave you the [D]ocument and you signed it in his presence and returned it to him?**
>
> * * *

> [MS. HALGAS]: **I don't recall.** I mean, if they were in the kitchen, he may have said, "They're in the kitchen, sign the [D]ocument," and I left it in the kitchen. If they were on the den desk, I signed it in his presence. **To be honest with you, I don't recall if I signed it in his presence or not.**
>
> * * *

> [COUNSEL FOR APPELLANT]: [B]ut you don't recall exactly where you were when you signed it?

> [MS. HALGAS]: In which room of the house, I don't remember.

(Emphasis added).

On cross-examination, Ms. Halgas testified that she signed three copies of the Document, but repeated that she did not remember whether she signed them in the presence of Mr. Halgas:

[COUNSEL FOR APPELLEES]: [A]s you sit here today, you cannot recall if your uncle was in the same room that you were in when you signed the document?

[MS. HALGAS]: That's correct.

\* \* \*

THE COURT: Did you sign one document?

[MS. HALGAS]: I signed three.

THE COURT: You signed three documents. I see.

(Emphasis added).

On September 14, 2010, the orphans' court rendered its opinion, stating, in relevant part:

The testimony of one witness to the [Document], to wit: [Ms.] Halgas, was inadequate as to whether she signed the [D]ocument in the presence of the testator and therefore the witnessing requirements for testamentary documents under [E.T.] § 4–102 have not been proven and therefore the Court determines that the [D]ocument presented is not a Codicil of the Will of [Mr.] Halgas.

This timely appeal followed. Additional facts will be set forth below as necessary to resolve the questions presented.

## DISCUSSION

### A.

### Burden of Proof

Appellant contends that the orphans' court erred in placing the burden of proving due execution on appellant, because the burden should have been placed on appellees. Appellant explains that the Court of Appeals made clear in *Slack v. Truitt,* 368 Md. 2, 791 A.2d 129 (2002), that "when a document is facially valid and exhibits the genuine signatures of the testator and subscribing [3] witnesses, irrespective of whether

---

**3.** Subscription is defined as "[t]he act of writing one's name under a written instrument; the affixing one's signature to any document, whether for the purpose of authenticating or attesting it, of adopting its

it contains a formal attestation clause, the document is to be afforded the presumption that it was duly executed," which places the burden of proving the lack of due execution on the document's opponent. Appellant claims that the Document is facially valid and thus is entitled to the presumption of due execution.

Appellees counter that "[t]he presumption of due execution of a will under [E.T.] § 4–102 applies only if the will includes a proper attestation clause, or, in the absence of an attestation clause, the proponent of the will can make a *prima facie* showing by some other means that the will was executed in accordance with [E.T.] § 4–102." Appellees claim that *Slack* did not change the requirement that a proponent of a will make a *prima facie* case of due execution either in the form of an attestation clause or its equivalent. Appellees also assert that, in *Slack,* the burden of proof shifted to the party challenging the will only *after* the will's proponent was able to meet his burden of proof that the will was executed in accordance with [E.T.] § 4–102. Appellees conclude that the Document "does not include an attestation clause and is completely devoid of any of the indicia of due execution that were found in *Slack* " and that, therefore, the burden of proof did not shift to appellees.

In Maryland, a testamentary document must be "(1) in writing, (2) signed by the testator, or by some other person for him, in his presence and by his express direction, and (3) attested and signed by two or more credible witnesses in the presence of the testator." [4] E.T. § 4–102. The burden of proving the existence of these elements, by a preponderance of the evidence, rests with the document's proponent. *See Van Meter v. Van Meter,* 183 Md. 614, 617–18, 39 A.2d 752 (1944); *see also* 3 Williams J. Bowe & Douglas H. Parker,

---

terms as one's own expressions, or of binding one's self by an engagement which it contains." *Black's Law Dictionary* 1427 (6th ed.1990).

**4.** There are limited exceptions to these statutory requirements, none of which are relevant to the instant appeal. *See* Md.Code (1974, 2011 Repl.Vol.), §§ 4–103, 4–104 of the Estates and Trusts Article.

*Page on the Law of Wills* § 29.16, at 436 (3d ed. 1961) ("The burden of proof which rests upon the proponent to establish the valid execution of the will, is satisfied if the essential facts are established by a preponderance of the evidence."). If a document's proponent, however, makes a *prima facie* case of due execution, a presumption of due execution attaches, and the burden of proof shifts to the document's opponent "to show by clear and convincing evidence" that the document is not valid. *See Slack,* 368 Md. at 8, 791 A.2d 129; *see also* Bowe & Parker, *supra,* § 29.16, at 435 and n. 8 (3d ed.1961) (noting that in Maryland and other jurisdictions, "the proponents are bound to make out a prima facie case of execution, and when they have done so, the burden is upon the contestants to rebut such prima facie case").

 Maryland has recognized that "a presumption of due execution attaches to a will that contains the testator's signature and an attestation clause signed by the witnesses." *Slack,* 368 Md. at 7–8, 791 A.2d 129 (footnote omitted). In *Van Meter,* the Court of Appeals said that an attestation was "the act of witnesses in seeing that those things exist and are done which the statute requires." 183 Md. at 619, 39 A.2d 752. In *McIntyre v. Saltysiak,* 205 Md. 415, 421, 109 A.2d 70 (1954), the Court elaborated on the meaning of an attestation:

> The attestation of the will is the act of the witnesses in seeing that those things exist and are done which the attestation clause declares were done and which the statute requires. After the witnesses so attest the will and subscribe their names, the statute is complied with. As the attestation clause, as such, preserves in permanent form a record of the facts attending the execution of the will and is *prima facie* evidence of the facts therein stated, the burden of proof is upon the caveators to show by clear and convincing evidence that the facts therein stated are not true.

An attestation clause is "[a] provision at the end of an instrument (esp[ecially] a will) that is signed by the instrument's witnesses and that recites the formalities required by the jurisdiction in which the instrument might take effect (such as

where the will might be probated)." *Black's Law Dictionary* 124 (7th ed.1999). An attestation clause "is itself *prima facie* evidence of the facts therein recited." *Woodstock College v. Hankey,* 129 Md. 675, 680, 99 A. 962 (1917).

In *Slack,* the Court of Appeals addressed for the first time "the question of whether the presumption of due execution arises notwithstanding the absence of an attestation clause." 368 Md. at 10, 791 A.2d 129. Because both appellant and appellees rely on *Slack* in the instant case, we shall discuss this case in detail.

In *Slack,* the testator, Dale Slack, went to the house of his neighbor, Dorothy Morgan, and requested that she sign a one-page handwritten document. *Id.* at 4, 791 A.2d 129. Slack had reserved space for two signatures following the words "Witnessed By" on the bottom left-hand side of the document. *Id.* Slack did not inform Morgan that the document was a will, and Morgan assumed it was a petition. *Id.* Morgan testified that she did not recall whether she saw Slack's signature on the document. *Id.* at 4–5, 791 A.2d 129. Approximately five minutes after Morgan signed the document, Slack asked Morgan's daughter, Sandra Bradley, to sign it. *Id.* at 5, 791 A.2d 129. Like Morgan, Bradley was unaware that she was signing a will, but unlike Morgan, Bradley noticed Slack's signature on the document when she signed it. *Id.* Both Morgan and Bradley signed the will in Slack's presence. *Id.* at 7, 791 A.2d 129. Approximately two hours later, Slack committed suicide. *Id.*

In the will signed by Morgan and Bradley as witnesses, Slack gave his fishing and camping gear and one third of all of his monetary holdings to Michael Truitt. *Id.* Slack also bequeathed his rings and other jewelry to Terri Truitt ("Terri"). *Id.* The orphans' court did not admit the will to probate. *Id.* at 6, 791 A.2d 129. Terri filed a *de novo* appeal to the circuit court, which also declined to admit the will to probate. *Id.* at 6, 791 A.2d 129. On appeal to this Court, we reversed, holding:

On these facts, we will not presume that Slack mediated a fraud against his own will. The ultimate question is whether Slack acknowledged the document as his own when he presented it to Morgan and Bradley. We conclude that he did by handing them a document in his handwriting and asking them with apparent authority to sign it. While the witnesses' attestations were hurried and careless, they were sufficient under [E.T.] § 4–102.

*Truitt v. Slack*, 137 Md.App. 360, 367, 768 A.2d 715 (2001), *aff'd*, 368 Md. 2, 791 A.2d 129 (2002) (citations and quotations omitted).

The Court of Appeals granted certiorari and affirmed this Court's decision. 368 Md. at 18, 791 A.2d 129. The Court explained that "a presumption of due execution attaches to a will that contains the testator's signature and an attestation clause signed by the witnesses." *Id.* at 7–8, 791 A.2d 129 (footnote omitted). The Court also noted that "once the presumption attaches, the burden of proof is on the [document's opponent] to show by clear and convincing evidence that the facts stated in the attestation clause are untrue." *Id.* at 8, 791 A.2d 129 (footnote omitted).

The Court, however, went further to state that an attestation clause is "not the *sine qua non* of the presumption of due execution." *Id.* at 12, 791 A.2d 129. The Court offered an alternative method to raise the presumption of due execution:

[O]nce it has been shown that a writing has been signed by the testator and attested and signed by two credible witnesses in the presence of the testator, there is a presumption of due execution.

*Id.* at 14, 791 A.2d 129. Although Slack's will lacked an attestation clause, the Court determined that, on the facts of the case, the presumption of due execution attached:

The will in the case *sub judice* bears on its face every indicia of due execution. It consists of a single page, written entirely in the testator's handwriting, and bearing the signature of the testator and two witnesses. **The two witnesses, in the presence of the testator, signed beneath**

the words "Witnessed By." The testator's signature, which the second witness saw, was nearly adjacent to the signatures of the witnesses. Finally, the testator asked each witness to sign the paper without preventing them from reading it. The presumption of due execution attaches to such a will.

*Id.* at 12, 791 A.2d 129 (emphasis added).

The Court also held that Morgan's lack of memory as to whether Slack had signed the will prior to her signing as a witness did not overcome the presumption of due execution:

It is important to recognize that [ ] Morgan did not testify that the testator had not signed the document. She simply could not remember seeing his signature. As the Court of Special Appeals observed, "while she could not recall seeing Slack's signature on the paper, she also could not certify that Slack did not sign the paper before he gave it to her." Morgan's failure to remember whether Slack had signed his will, or her failure to look at the document she signed, does not suggest that the testator had not signed the will prior to Morgan's signing it. Her failure to remember the signature is just that, a failure to remember.

This Court and most other state courts consistently have found that a witness' [sic] inability to remember certain events should not overcome the presumption of due execution.

*Id.* at 14–15, 791 A.2d 129 (citation omitted). Therefore, the Court held that there was no clear and convincing evidence sufficient to overcome the presumption that Slack's will was duly executed. *Id.* at 17–18, 791 A.2d 129.

In the instant case, appellant misconstrues *Slack* by stating that, "when a document is facially valid and exhibits the genuine signatures of the testator and subscribing witnesses, irrespective of whether it contains a formal attestation clause, the document is to be afforded the presumption that it was duly executed." This is not the holding of *Slack*. The Court of Appeals held in *Slack* that, in the absence of an attestation clause, if a proponent of a testamentary document can adduce

sufficient evidence from the document and/or surrounding circumstances to make a *prima facie* case for the satisfaction of the statutory requirements for execution of a will, the presumption of due execution attaches. *See id.* at 12, 791 A.2d 129.

 As discussed above, the Document contains no attestation clause to create the presumption of due execution. We thus must look to the Document and to the circumstances of its execution to see if there is sufficient evidence of a *prima facie* case of due execution.

It is undisputed that the signatures of Mr. Halgas, appellant, and Ms. Halgas on the Document are genuine. E.T. § 4–102, however, requires that the Document not only be "signed" by two or more credible witnesses, but be "attested" by them. As previously indicated, attestation is the "seeing that those things exist and are done which the statute requires." *Van Meter*, 183 Md. at 619, 39 A.2d 752.

 Not only does the Document not contain an attestation clause, there is nothing on the Document to indicate that, when appellant and Ms. Halgas signed the Document, they were attesting to it. Unlike *Slack,* the words "witness," "witnessed by," or some other variation do not appear anywhere on the Document, much less next to the signatures of appellant or Ms. Halgas.[5] *See* 368 Md. at 4, 791 A.2d 129. Many courts of our sister jurisdictions have found that, in the absence of an attestation clause, a document is duly attested where the witness signs his or her name after the word "witness" or the phrase "witnessed by," or attaches his or her signature to a similar phrase. *See, e.g., In re Pitcairn's Estate,* 6 Cal.2d 730, 59 P.2d 90, 91 (1936) (signature of witness appeared next to the phrase "Signed and witnessed by [witness's name and address]"); *Mead v. Trustees of the Presbyterian Church,* 229 Ill. 526, 82 N.E. 371, 373 (1907) (signatures of witnesses appeared directly after or underneath

---

**5.** Indeed, there is no designated signature line for Ms. Halgas; her signature just appears below that of appellant.

the word "witness"); *see also* Annotation, *Presumption as to Due Execution of Will from Attestation, With or Without Attestation Clause,* 76 A.L.R. 617, 622 (1932) (noting that there is "a presumption of proper execution even though there is no attestation clause, where the attestation is merely by subscription, or followed by the word 'witnesses' ").[6]

*Slack* does permit the finding of *prima facie* evidence of attestation from the circumstances surrounding the execution of a document. *See* 368 Md. at 12, 791 A.2d 129. Here, appellant testified that (1) Mr. Halgas told him that the Document was a codicil and asked him to sign all three copies; (2) appellant signed all three copies of the Document in the presence of Mr. Halgas; and (3) Mr. Halgas signed all three copies of the Document "in front of [appellant]." In addition, Ms. Halgas testified that (1) Mr. Halgas told her that in two weeks he would have a document for her to sign that changed a provision of the Will; (2) when she arrived two weeks later, the Document was there and had been signed by both Mr. Halgas and appellant; and (3) she signed it.

Ms. Halgas, however, testified that she could not recall whether she signed the Document in the presence of Mr. Halgas. Ms. Halgas explained:

And to be honest with you, I don't remember where the documents were sitting. They may have been on his desk. They may have been in the kitchen. I can't recall.

According to Ms. Halgas, if the documents were in the kitchen, she did not sign them in his presence, whereas if the

---

6. In his reply brief, appellant relies on this quotation from the A.L.R. citation to support his contention that the word "witness" need not accompany the signature of a witness to a codicil for there to be *prima facie* evidence of attestation. Appellant's reliance is misplaced. In the cases cited in both the A.L.R. and *Slack*, the word "witness" or phrase "witnessed by" was attached to the signature. *See, e.g., German Evangelical Bethel Church v. Reith*, 327 Mo. 1098, 39 S.W.2d 1057, 1059–60, 1062 (1931); *Mead v. Trustees of the Presbyterian Church*, 229 Ill. 526, 82 N.E. 371, 373 (1907). Moreover, unlike the testamentary statutes in some states, E.T. § 4–102 requires both attestation *and* signing (or subscription). Thus, in Maryland, the mere act of signing a document does not, standing alone, provide evidence of attestation.

documents were on Mr. Halgas' den desk, she signed them in his presence. Ms. Halgas concluded: "To be honest with you, I don't recall if I signed [the Document] in his presence or not."

In sum, Ms. Halgas could not testify that the statutory requirement of her signing as a witness in the presence of Mr. Halgas had been done, and thus she could not attest to the due execution of the Document. *See* E.T. § 4–102. There being no other evidence of Ms. Halgas's signing the Document in the presence of Mr. Halgas,[7] we conclude that there was insufficient evidence to establish a *prima facie* case of due execution of the Document as a codicil, and thus the presumption of due execution did not attach. Accordingly, the orphans' court did not err by placing the burden of proving due execution of the Document on appellant.

## B.

### The Court's Reliance on the Witness's Testimony

▓ Appellant contends that the orphans' court "erred when it determined that an interested witness's failure to recall whether she was in the same room as the testator at the time she signed the codicil is evidence against its due execution." Relying on *Slack*, appellant asserts that the "inability of a witness to remember the facts surrounding the execution

---

7. Appellant claims that other evidence supports the factual conclusion that Ms. Halgas signed the Document in the den in the presence of Mr. Halgas, because (1) appellant signed all three copies of the Document in the den, where Mr. Halgas "spen[t] most of his time"; (2) all three copies of the Document were left on Mr. Halgas' desk in the den after being signed by appellant and Mr. Halgas; and (3) there was no evidence that the copies of the Document were thereafter moved from the den. These facts, however, do not relate to the circumstances surrounding the signing of the Document by Ms. Halgas that occurred two weeks *after* appellant signed the Document. Moreover, Ms. Halgas specified in her testimony the two possible locations of the copies of the Document, the kitchen or the den desk, and the location of her signing the copies of the Document as either the kitchen or the den. Ms. Halgas did not recall which location it was, and did not place any greater likelihood on one location over the other.

of the instrument is insufficient to overcome the presumption of due execution." We disagree.

As previously discussed, in *Slack,* the Court of Appeals held that under the circumstances of that case, the presumption of due execution attached to the will, even though the will lacked an attestation clause. 368 Md. at 12, 791 A.2d 129. The Court then addressed the petitioner's argument that the will was not properly attested to by Morgan, because she could not remember seeing the testator's signature on the document when she signed it.[8] *Id.* at 12, 14, 791 A.2d 129. The Court of Appeals held that Morgan's lack of memory was not fatal to the admissibility of the will to probate, because

> Morgan's failure to remember whether Slack had signed his will, or her failure to look at the document she signed, does not suggest that the testator had not signed the will prior to Morgan's signing it. Her failure to remember the signature is just that, a failure to remember.
>
> This Court and most other state courts consistently have found that **a witness' [sic] inability to remember certain events should not overcome the presumption of due execution.**

*Id.* at 14–15, 791 A.2d 129 (emphasis added).

Appellant cites to the above language to support its contention that Ms. Halgas's lack of memory as to whether she signed the Document in Mr. Halgas's presence should not be fatal to the admissibility of the Document to probate. In *Slack,* however, the presumption of due execution *had already attached* to the document, and the Court of Appeals held that the witness's lack of memory did not *overcome* that presumption. *Id.* at 15, 791 A.2d 129. The rule in *Slack* thus governs the impact of a witness's lack of memory in *overcoming* the presumption of due execution once the presumption attaches. By contrast, in the instant case, we have already held that the presumption of due execution never attached to the Document.

---

8. The other witness to the will, who signed five minutes after Morgan, *testified that she saw Slack's signature on the will before she signed it.* 368 Md. at 5, 791 A.2d 129.

Without a presumption of due execution, the orphans' court was free to base its decision on Ms. Halgas's testimony that she did not recall whether she signed the Document in the presence of Mr. Halgas. Accordingly, the orphans' court did not err by relying on Ms. Halgas's testimony in holding that the testamentary requirements of E.T. § 4–102 had not been satisfied in the case *sub judice.*

## C.

### "In the presence of the testator" Requirement

Appellant contends that the requirement of E.T. § 4–102 that a witness sign "in the presence of the testator" is satisfied where a witness signs a codicil, at the direction of the testator, while in the same house as the testator. Appellant explains:

There should be no distinction between a situation where a testator has placed such trust in the witness that he does not feel compelled to turn his head to observe the witness place his signature on the document and a situation where a testator has placed such trust in the witness that he does not feel compelled to require that the witness come into the same room of the home when the witness signs.

Appellant argues that the "in the presence of the testator" requirement was enacted to prevent fraud, but that, in the instant case, "[i]t is difficult to imagine how under these circumstances a fraud could have been committed by [Ms.] Halgas while in the act of complying with her uncle's request that she witness his codicil."

Appellees counter that the position advocated for by appellant is simply "not the law of this state." Appellees claim that E.T. § 4–102 was crafted to remove uncertainty from will making and to prevent fraud, and that the possibilities of fraud would "abound" if the "in the presence of the testator" was interpreted as loosely as appellant seeks.

It is well established that, with regards to the "in the presence of the testator" requirement of E.T. § 4–102, "the subscription by such witnesses must be made within the

unobstructed range of vision of the testator, although if he is able to see it, without any material change of position, the fact that he does or does not avail himself of the privilege is immaterial." *Brittingham v. Brittingham,* 147 Md. 153, 160, 127 A. 737 (1925). This test is referred to the "line-of-vision" test, for which "[i]t is not necessary for the testator to have watched the witnesses sign, as long as the testator *could* have watched them sign." Restatement (Third) of Prop.: Wills and Other Donative Transfers § 3.1 cmt. p (1999) (emphasis added).

Appellant advocates, however, for a change in this requirement, so that a duly executed document would no longer need to be "attested and signed by two or more credible witnesses *in the presence of the testator,*" but rather, merely be as long as it was attested and signed by the witnesses *in the same house as the testator. See* E.T. § 4–102 (emphasis added). Whatever the merits of this test, there is no basis in the law for it, and we see no reason to adopt it. In the case *sub judice,* Ms. Halgas testified that she signed the copies of the Document either in the kitchen or in the den. According to Ms. Halgas, if she signed in the den, she did so in the presence of Mr. Halgas, but not if she signed in the kitchen. Consequently, the evidence shows that signing the copies of the Document in the kitchen was not within the "unobstructed range of vision of the testator." *Brittingham,* 147 Md. at 160, 127 A. 737. Because Ms. Halgas could not recall whether she signed in the kitchen or the den, and did not place any greater likelihood on one location over the other, the evidence did not support a finding that it was more likely than not that Ms. Halgas signed the copies of the Document in the den in the presence of Mr. Halgas. Accordingly, the orphans' court did not err in ruling that the requirements of E.T. § 4–102 had not been proven, and thus the Document could not be admitted to probate as a codicil to the Will.

**JUDGMENT OF THE ORPHANS' COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**